FILED
2015 Mar-17  PM 12:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DEBORAH L. RHYNES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:14-CV-01651** |
| | ) | |
| **COLONIAL MANAGEMENT** | ) | |
| **GROUP, LP,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

The claims of the plaintiff in this action, Deborah L. Rhynes, originally were asserted in a complaint filed jointly with Kimberly Haley-Muhammad.[1]  This court severed the claims of Deborah Rhynes in a memorandum opinion and order entered on August 26, 2014, and directed the Clerk to open a new case file styled *Deborah L. Rhynes v. Colonial Management Group, LP*.[2]  Ms. Rhynes then filed an amended complaint, asserting claims of race discrimination and a race-based hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981, against her former employer, Colonial Management Group, LP.[3]  The case presently is before the court on defendant's

---

[1] *See Kimberly Haley-Muhammad and Deborah L. Rhynes v. Colonial Management Group, LP*, Civil Action No. 5:13-cv-02061-CLS.

[2] *See* doc. no. 1 (August 26, 2014 Memorandum Opinion and Order), at 11.

[3] Doc. no. 2 (Amended Complaint).

motion for summary judgment.[4]   Upon consideration of the pleadings, briefs, evidentiary submissions, and oral arguments of counsel, this court concludes that the motion should be granted.

## I. SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d

---

[4] Doc. no. 12.

1321, 1324 (11th Cir. 1983) (alteration supplied).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  SUMMARY OF FACTS

Defendant, Colonial Management Group, LP ("Colonial"), operates methadone treatment centers throughout the United States.[5]  Plaintiff, Deborah L. Rhynes is an African-American.  She was hired by Colonial on May 17, 2011, to work as a part-time nurse in the company's Huntsville Metro Treatment Center ("Huntsville Metro").[6]  Colonial promoted Rhynes to a Treatment Services Coordinator position two months later.[7]  Treatment Services Coordinators supervise clinical activities and

---

[5] Doc. no. 35-6 (Hamer Deposition), at 24.

[6] Doc. no. 14-2 (Rhynes Deposition), at 140.

[7] *Id.* at 141; doc. no. 14-5 (Case Declaration), ¶ 3.

manage medical staff at the treatment centers.[8]

## A.    Suspension

Rhynes participated in a conference call during May of 2012 that addressed Colonial's patient assessment procedures.[9]   Rhynes stated to the company's Chief Operating Officer, Brack Jeffries, that she would not follow Colonial's patient assessment procedures because, in her opinion, they violated state regulations.[10] Jeffries responded:   "maybe you [are] just in the wrong field."[11]   Rhynes was suspended for ten days while Colonial investigated her concerns.[12]

## B.    Harassment Complaint

The following month, on June 12, 2012, Rhynes lodged a written complaint against one of Huntsville Metro's male nurses, Narciso Ortiz, who is not African-American.[13]   Rhynes alleged in her complaint that Ortiz frequently cursed and yelled at Huntsville Metro employees, but had never been disciplined.[14]   She also described

---

[8] Doc. no. 14-2 (Rhynes Deposition), at 125.

[9] *Id.* at 301, 314.

[10]   *Id.* at 314-16.

[11] *Id.* at 317 (alteration supplied).

[12] *Id.* at 300–01.   The results of that investigation are undisclosed.   In addition, Rhynes has not alleged that she was suspended without pay.

[13] Doc. no. 14-10 (Rhynes June 12, 2012 Complaint).

[14] *Id.* at ECF 3.   "ECF" is the acronym for "Electronic Case Filing," a system that allows parties to file and serve documents electronically.   *See Atterbury v. Foulk*, No. C-07-6256 MHP, 2009 WL 4723547, *6 n.6 (N.D. Cal. Dec. 8, 2009).   Bluebook Rule 7.1.4 *permits* citations to the "page numbers generated by the ECF header."   *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 257 n.5

an occasion on which Ortiz verbally assaulted Rhynes in her office and refused to leave, making her feel physically threatened.[15]  Although Rhynes did not mention race in her written complaint, she complained verbally to Regional Director Brent Hamer that Ortiz had a history of verbally abusing the African-American female employees at Huntsville Metro.[16]

Colonial's Director of Human Resources, Kristin Hilton, briefly discussed Rhynes's complaint with her while Hilton was investigating another issue at Huntsville Metro.[17]  Hilton had flown to Huntsville to investigate a white employee's allegations of sexual harassment and, at the conclusion of that investigation, she discharged the employee responsible for the harassment.[18]  Hilton merely asked Rhynes a few questions about her allegations of harassment, and stated that Ortiz "has been [at Huntsville Metro for] ten years[,] and nobody has ever complained so there's nothing I can do."[19]

---

(D.D.C. 2011) (citing *The Bluebook: A Uniform System of Citation* R. B. 7.1.4, at 21 (Columbia Law Review Ass'n *et al.*, 19th ed. 2010)).  Even so, the Bluebook recommends "against citation to ECF pagination in lieu of original pagination."  *Wilson*, 772 F. Supp. 2d at 257 n.5.  Thus, unless stated otherwise, this court will cite the original pagination in the parties' pleadings.  When the court cites to pagination generated by the ECF header, it will, as here, precede the page number with the letters "ECF."

   [15] *Id.* at ECF 4.

   [16] Doc. no. 14-2 (Rhynes Deposition), at 342.

   [17] *Id.* at 240–244.

   [18] *Id.*

   [19] *Id.* at 242–43 (alterations supplied).

5

After Kristin Hilton spoke to Rhynes, she and Regional Director Brent Hamer conducted an investigation "and concluded that both Ms. Rhynes and Mr. Ortiz were to blame for the incident.  As such, [they] decided not to discipline either Ms. Rhynes or Mr. Ortiz."[20]

## C.   Termination

Deborah Rhynes's supervisor, Program Director Kimberly Haley-Muhammad, took FMLA leave during the summer of 2012, and Regional Director Brent Hamer assigned some of Haley-Muhammad's responsibilities to the Treatment Services Coordinators at Huntsville Metro.[21]   Hamer assigned Haley-Muhammad's cash handling responsibilities to Rhynes during July of 2012.[22]   Hamer explained Colonial's cash handling procedures as follows:

> Colonial's cash handling procedures, which are contained in Colonial's Policies and Procedures Manual, require an accounting of money collected from patients' methadone treatments at the end of each shift.   The nurses are then required to input the cash collection, methadone distributed and methadone remaining in inventory into Methasoft, a software program designed for methadone clinics.  Prior to relieving the nurses from their shifts, the Program Director or [Treatment Services Coordinator] checks the accounting to ensure it is correct and that the amount of money collected equals the doses of methadone distributed.  The Program Director or [Treatment Services Coordinator] then signs off on the nurse's accounting, collects the

---

[20] Doc. no. 14-1 (Hamer Declaration), ¶ 9 (alteration supplied).

[21] Doc. no. 14-2 (Rhynes Deposition), at 186; doc. no. 14-1 (Hamer Declaration), ¶ 10.

[22] Doc. no. 14-2 (Rhynes Deposition), at 186.

money from the nurse, completes deposit slips for the cash collected, scans the completed deposit slips, forwards the scanned slips to the accounting department, places the slips in numbered bank envelopes and locks the envelopes in Colonial's safe. The Program Director or [Treatment Services Coordinator] then records the deposit in a log book for Loomis, an armored car company that picks up the deposits.

Doc. no. 14-1 (Hamer Declaration), ¶ 11 (alterations supplied). Brent Hamer then stated that

Ms. Rhynes was responsible for handling Huntsville Metro's cash and recording the correct deposit for July 4, 2012 and July 5, 2012.[23] Ms. Rhynes recorded a total deposit of $14,282.00 for July 4, 2012. On July 5, 2012, Colonial collected $8,734.00 in cash from patients but there was no corresponding deposit. Colonial's log book indicates Loomis did not pick up any bank deposit envelopes on July 5, 2012. [Loomis's log book contains Rhynes's signature next to the deposits made on July 4, 6, 7, and 8, however[24]]. In September 2012, Colonial's accounting department discovered $8,734.00 was missing as a result of the deposits from July 4, 2012 and July 5, 2012.[25] Ms. Haley-Muhammad informed [Regional Director Brent Hamer] of the discrepancy, and [the two] conducted an investigation.

Id. ¶ 12 (alterations and footnotes supplied).

Rhynes could not provide Hamer and Hilton an explanation for the missing money.[26] As such, Colonial "blamed [Rhynes] for the money being missing," and

---

[23] Id. at 198–99.

[24] Id. at 225–26.

[25] Id. at 203.

[26] Id. at 214. At the time of her deposition, Rhynes testified that she still had no explanation for the missing money. Id. She also testified that she was unsure whether she actually handled the missing money. Id. at 210.

never gave her "any indication that they believed somebody else was responsible for that missing money."[27]

At the conclusion of the investigation into the missing money, Director of Human Resources Kristin Hilton decided to terminate Rhynes's employment.[28] Rhynes received the following termination notice on September 26, 2012:[29]

### List of previous warnings and type(s) of corrective action(s):

05/06/2012 Suspension/Probation

07/09/2012 Written Warning – Policy Violation/Work Quality

### Summary of Unacceptable Behavior

On 09/11/2012, an internal accounting audit revealed Ms. Deborah Rhynes, Treatment Services Coordinator at Huntsville Methadone Treatment Center failed to report to the corporate office a cash discrepancy from 07/05/2012 resulting in a financial loss of $8,734.00. On 7/6/2012, there was no deposit made for the previous day's money. The total amount collected on 07/05/2012 was $8,734.00, however that money went missing. Ms. Rhynes did not escalate the issue of the missing money. Ms. Rhynes did not make anyone aware that there was a deposit missing.

After the missing deposit was discovered and brought to Ms. Rhynes attention, she completed a [Colonial] Incident Report Form — on which [she] states that she "was not aware of the error" until 09/11/2012 when she was asked to help locate the daily receipts totaling $8,734.

---

[27] *Id*. at 214–15 (alteration supplied).

[28] Doc. no. 14-7 (Defendant's Responses to Interrogatories), ¶ 1.

[29] Doc. no. 2 (Amended Complaint), ¶ 6.

> Ms. Rhynes was appointed in charge of the clinic on behalf of Kimberly [Haley-Muhammad], Program Director, during her absence. Part of that responsibility included the accuracy, safekeeping and accountability of the clinic's cash and the end of the day count.  Ms. Rhynes['s] daily tasks included securing the cash in a safe storage, depositing the cash, and accurate reporting of all funds including cash discrepancies.
>
> Ms. Rhynes did not alert her regional director or any member of management that a deposit was missing.
>
> Ms. Rhynes['s] actions are in violation of [Colonial] Policy and Procedures, Section 2 – "Organizational Management, Cash Control and Fiscal Management," Section 6 Personnel Policies – "Zero Tolerance Policies (ZTP)," Unethical Business Practices, "not making bank deposits," issues occurring on property that result in a financial loss to the organization can be considered unethical business practices.
>
> Prohibited Behavior – (#3) "Inability, negligence or unwillingness to perform assigned work or maintain expected performance levels; poor performance," (#5) "Inappropriate cash handling resulting in a financial loss for [Colonial], and (#6) "Failure to adhere to [Colonial's] policies or procedures."

Doc. no. 14-12 (Termination Notice), at 1 (alterations supplied).  Rhynes did not receive any severance pay.[30]

Following her termination, Rhynes lodged a complaint of discrimination with Colonial, but Colonial took no action on that complaint.[31]  Colonial replaced Rhynes with Dustin Vick, who is a white male, and paid him a higher salary than it had paid

---

[30] *Id.* ¶ 16.

[31] *Id.* ¶ 11.

Rhynes.[32]

### D.      Equal Employment Opportunity Commission Charge and Dismissal

Rhynes filed a formal "Charge of Discrimination" with the Equal Employment Opportunity Commission on October 18, 2012.[33]  The agency issued a "Dismissal and Notice of Rights" on August 14th of the following year, stating that it had terminated its investigation of her charge because it was unable to conclude that the information obtained established violations of the civil rights statutes.[34]  That document notified Rhynes of her right to file suit, and this action followed.

## III.  HOSTILE WORK ENVIRONMENT

Plaintiff's attorney acknowledged during oral argument that plaintiff had abandoned her claim for a race-based hostile work environment.   Accordingly, summary judgment is due to be granted on that claim.

## IV.  RACE DISCRIMINATION

Rhynes's race discrimination claims are asserted under Title VII and § 1981, both of which "have the same requirements of proof and use the same analytical framework . . . ." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).   The essential element under each statute is proof that the employer

---

[32] *Id.* ¶ 15.

[33] Doc. no. 2-1 (EEOC Charge).

[34] Doc. no. 2-2 (Dismissal and Notice of Rights).

intentionally inflicted the adverse employment action complained of because of the plaintiff's race. *See, e.g.*, *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 767 (11th Cir. 2005) (observing that disparate treatment claims based upon a plaintiff's race and "brought under Title VII, § 1981, and § 1983, all require proof of discriminatory intent").

Direct evidence of an employer's discriminatory intent usually is not available. *See, e.g.*, *Sheridan v. E.I. DuPont de Nemors & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996) (*en banc*). That is true in this case. Thus, plaintiff bears the initial burden of establishing the employer's discriminatory intent through the use of circumstantial evidence. *See Vessels*, 408 F.3d at 767. Federal courts evaluate the sufficiency of such evidence using some variant of the analytical framework announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as subsequently elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See also, e.g.*, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2004) (*en banc*); *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 701 (11th Cir. 1998); *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1501 (11th Cir. 1990).

Under that familiar framework, a plaintiff must first establish a *prima facie* case of disparate treatment, which gives rise to a presumption of discrimination. To

11

rebut that presumption, the employer must articulate a legitimate, nondiscriminatory reason for the contested employment action.  If the employer does so, the presumption of discrimination drops from the case, and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely a pretext for unlawful discrimination. *See, e.g.*, *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-56.

The specific elements of a plaintiff's *prima facie* case generally vary with the nature of the adverse employment action that is complained of.  Here, Rhynes complains of four adverse employment actions: race-based wage discrimination; denial of severance pay; suspension; and termination.[35]

## A.    Race-Based Wage Discrimination

To establish a *prima facie* case of race-based wage discrimination, Rhynes must show that she belongs to a protected class; similarly-situated comparators outside her protected class received higher wages; and, she was qualified to receive the higher wages.  *Cooper v. Southern Co.*, 390 F.3d 695, 734–35 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). Rhynes belongs to a protected class, and she has identified one suitable comparator:

---

[35] *See* doc .no. 2 (Amended Complaint).

*i.e.*, Dustin Vick, her successor.[36]  Accordingly, Rhynes has established a *prima facie* case of wage discrimination.

Colonial contends that it paid higher wages to Dustin Vick because he held a doctoral degree, whereas Rhynes had obtained only her master's degree.[37]  Colonial further contends that it paid Vick higher wages because Vick had several years of experience working at a methadone treatment facility before he was hired by Colonial, whereas Rhynes had no prior experience before she was hired by the company.[38]  Colonial met its burden of stating legitimate, non-discriminatory reasons for the pay disparity.

Rhynes offered no arguments concerning pretext for her wage discrimination claim either in her briefing or at oral argument.  Further, the court could find no evidence casting doubt upon Colonial's stated reasons for paying Dustin Vick higher wages than Rhynes.  Accordingly, summary judgment is due to be entered in favor of Colonial on plaintiff's race-based wage discrimination claim.

## B.   Race-Based Refusal to Tender Severance Pay

Rhynes contends that Colonial's refusal to tender her severance pay was based

---

[36] *Id.* ¶ 15.  Rhynes also pointed to her predecessor, Kimberly Crawford, as a comparator, but Rhynes does not dispute that she actually was paid *more* than Crawford.  *See* doc. no. 13 (Summary Judgment Brief), at 5, ¶ 21; doc. no. 18 (Plaintiff's Response).

[37] Doc. no. 14-1 (Hamer Declaration), ¶ 15.

[38] *Id.*

upon her race.[39]  Even so, she cannot establish a *prima facie* case of discrimination

because she cannot point to any similarly-situated employee outside her protected

class who received severance pay following termination of employment.

> The burden of identifying similarly situated individuals is a heavy one. *See McDonald v. Village of Winnetka*, 371 F.3d 992, 1002–03 (7th Cir. 2004) ("It is clear that similarly situated individuals must be very similar indeed.").  In the employment context, the Eleventh Circuit requires that "similarly situated" individuals be similar "in all relevant respects." *Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).  The determination is fact-specific, and the goal is to make realistic, accurate comparisons.  "Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples." *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989), *overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004).

*Hicks v. Jackson County Commission*, 374 F. Supp. 2d 1084, 1098 (N.D. Ala. 2005)

(Smith, J.).  Rhynes has pointed to four possible comparators, but none was employed

by Colonial as a Treatment Services Coordinator.[40]  Indeed, it is undisputed that

Colonial "has not paid any [Treatment Services Coordinator] severance over the last

five years."[41]  Further, Rhynes has not shown that the circumstances surrounding the

termination of the four supposed comparators were similar to those surrounding her

---

[39] Doc. no. 18 (Plaintiff's Response), at 15.

[40] Doc. no. 13 (Summary Judgment Brief), at 20, ¶¶ 107–10; doc. no. 18 (Plaintiff's Response), at 5.

[41] Doc. no. 14-7 (Defendant's Responses to Interrogatories), at 7 (alteration supplied).

own termination. *See Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.").

Accordingly, summary judgment is due to be entered in favor of Colonial on plaintiff's claim for denial of severance pay.

## C.   Suspension Because of Plaintiff's Race

Rhynes contends that her suspension during May of 2012 was discriminatory.[42] Even so, she cannot establish a *prima facie* case of discrimination because she cannot point to any similarly-situated employee outside her protected class who was accused of similar misconduct but was disciplined differently. *See id.* She contends that two Huntsville Metro nurses, Rick Layzod and Melissa Burt, also refused to follow Colonial's assessment procedures, but were not disciplined. Plaintiff's counsel admitted during oral argument, however, that there was no evidence that either Layzod or Burt actually communicated their refusal to anyone other than plaintiff, or that the two actually failed to follow the assessment procedures. Further, there is no evidence that the alleged comparators were accused of any misconduct.

Accordingly, summary judgment is due to be entered in favor of Colonial on

---

[42] *See* doc. no. 2 (Amended Complaint).

Rhynes's discriminatory suspension claim.

**D.      Termination Because of Plaintiff's Race**

"A *prima facie* case of discriminatory discharge may be established in different ways." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).   Here, Rhynes seeks to establish a *prima facie* case of discriminatory termination according to a method articulated by the Eleventh Circuit in *Nix*: *i.e.*, that she is "a member of a protected class," and she was "qualified for the job, but was fired and replaced by one outside the protected class."[43]  *Id.*  None of those elements is in dispute.   Accordingly, Rhynes has established a *prima facie* case of discriminatory termination.

Colonial contends that Rhynes's employment was terminated because she "fail[ed] to report a loss of $8,734.00 that went missing when she was responsible for cash handling."[44]   Colonial met its burden of articulating a legitimate, non-discriminatory reason for terminating Rhynes's employment.

In order to show that an employer's stated reasons are merely a pretext for discrimination, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

---

[43] *See* doc. no. 18 (Plaintiff's Response), at 13.

[44] Doc. no. 13 (Summary Judgment Brief), at 29 (alteration supplied).

legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (internal quotation marks omitted); *see also, e.g.*, *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997); *Cooper-Houston v. Southern Railway Co.*, 37 F.3d 603, 605 (11th Cir. 1994).

Rhynes first contends that Colonial's stated reason is merely a pretext for discrimination because Colonial did not discipline Regional Director Brent Hamer for the missing cash, "even though he was in charge of the clinic during [Program Director Haley-Muhammad's] absence, and testified that he most likely prepared cash deposits during [her] absence."[45]  Hamer is not a proper comparator, however. Rhynes has not shown that Hamer actually mishandled cash — or that he was accused of doing so — and was not disciplined.  *See Rioux v. City of Atlanta*, 520 F.3d 1269, 1280 (11th Cir. 2008) (holding that a plaintiff can demonstrate pretext using comparator evidence only if the plaintiff and the comparator "*are involved in or accused of* the same or similar conduct and are disciplined in different ways") (emphasis supplied).  Instead, Rhynes argues that Hamer, as Regional Director, was *ultimately responsible for* the missing cash and should have been disciplined instead.

---

[45] Doc. no. 18 (Plaintiff's Response), at 8–9, ¶ 16 (alterations supplied).

Rhynes cannot establish pretext simply by laying the blame for her alleged misconduct at the feet of her supervisor.  At oral argument, plaintiff's counsel contended that it was unfair for Colonial to hold Rhynes solely responsible for the missing cash, considering Hamer also had cash handling responsibilities.[46]  As the Eleventh Circuit has emphatically reiterated, however, "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers," the courts do not interfere. *Elrod v. Sears, Roebuck, and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).  *See also Alvarez*, 610 F.3d at 1266 ("The question is whether [plaintiff's] employers were dissatisfied with her for these or other non-discriminatory reasons, *even if mistakenly or unfairly so*, or instead merely used those complaints about [plaintiff] as cover for discriminating against her") (alterations and emphasis supplied).  Moreover, Rhynes has cast no doubt on whether Colonial "in good faith *believed*" that Rhynes was responsible for the cash deposits on July 5, 2012.  *Elrod*, 939 F.2d at 1470 (emphasis in original).  On the contrary, Rhynes testified that Colonial "blamed [her] for the money being missing," and never gave her "any indication that they believed

---

[46] *Id.* at 5, ¶ 101.

18

somebody else was responsible for that missing money."[47]

Rhynes also attempts to show pretext by pointing to other comparators: *i.e.*, nurses Narciso Ortiz and Bridget Liddell.[48]   Rhynes contends that nurse Narciso Ortiz, among others, was responsible for several "cash discrepancies" at Huntsville Metro, but that he was never disciplined.[49]   Rhynes clarified her contention in the following colloquy from her deposition:

> Q.    Most of the cash discrepancies would be $100 or less, correct?
>
> A.    Yes.
>
> Q.    Do you know of anybody who had a cash discrepancy of several thousands of dollars on a day that they were handling the cash?
>
> A.    Not on one day, but I think my statement was over time, I don't know how much each individual's amount of cash would have add[ed] up [to].
>
> Q.    Do you know if anybody else had cash discrepancies in the thousands of dollars sitting here today?
>
> A.    I don't know.

Doc. no. 14-2 (Rhynes Deposition), at 257–58 (alterations supplied).   It must be noted that Rhynes could not testify as to how many times Ortiz was accused of cash

---

[47] Doc. no. 14-2 (Rhynes Deposition), at 214–15 (alteration supplied).

[48] *Id.* at 238–39, 254.

[49] Doc. no. 14-2 (Rhynes Deposition), at 253–54.

discrepancies, or as to any specific amounts.[50]

Ortiz's alleged misconduct, though somewhat similar in kind to the conduct of which Rhynes was accused, is clearly dissimilar in degree. *See Maniccia*, 171 F.3d at 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges").  Further, there is no evidence that Ortiz ever was responsible for "the accuracy, safekeeping and accountability of [Huntsville Metro's] cash and the end of the day count."[51]  Ortiz's mishandling of very small sums of money, on an undisclosed number of occasions, is not sufficiently similar to Rhynes's alleged misplacement of $8,730, an entire day's worth of Huntsville Metro's cash deposits, to demonstrate pretext.

Rhynes next points to Bridget Liddell as a comparator.  Lidell is a nurse whose faulty recordkeeping resulted in Colonial being fined $1.8 million by the United States government's Drug Enforcement Administration.[52]   Although Liddell's misconduct resulted in a large financial loss to Colonial, her misconduct was wholly unrelated to cash handling.[53]  Accordingly, Liddell is not a suitable comparator.

---

[50] *See* doc. no. 14-2 (Rhynes Deposition), at 252–59.

[51] Doc. no. 14-12 (Termination Notice), at ECF 1 (alteration supplied).

[52] Doc. no. 14-2 (Rhynes Deposition), at 238.

[53] *See id.*

Rhynes listed several more comparators in her amended complaint — *i.e.*, Susan Case, Leslie Putnam, Jennifer Needham, Karen Pinion, Steve Flora, and Charity Haugen — but none of those employees was accused of misconduct related to cash handling or financial losses to Colonial.[54]  Instead, Rhynes contends only that they "violated regulations and company policies" but were not disciplined.[55]  Rhynes cannot establish pretext simply by generalizing her own misconduct and that of others in hopes of identifying a suitable comparator.

Rhynes has failed to show that Colonial's articulated reason for the termination of her employment is merely a pretext for discrimination.   Accordingly, summary judgment is due to be entered in favor of Colonial on Deborah L. Rhynes's discriminatory termination claim.

## V.  CONCLUSION AND ORDERS

Based upon the foregoing discussion, it is ORDERED that the motion for summary judgment filed by defendant, Colonial Management Group, LP, is GRANTED, and all claims asserted herein by Deborah L. Rhynes are DISMISSED with prejudice.  Costs are taxed to plaintiff.  The Clerk is directed to close this file.

---

[54] Doc. no. 2 (Amended Complaint), ¶ 8.

[55] *Id.*

21

**DONE** and **ORDERED** this 17th day of March, 2015.

United States District Judge